# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00053-CV

---

**Mary Louise Serafine, Appellant**

**v.**

**The Honorable Karin Crump, The Honorable Bob Pemberton,
The Honorable Melissa Goodwin, and The Honorable David Puryear, Appellees**

---

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-002601, THE HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING

---

## O P I N I O N

This is an interlocutory appeal from orders relating to the trial court's finding that Mary Louise Serafine is a vexatious litigant, *see generally* Tex. Civ. Prac. & Rem. Code §§ 11.051, 11.054, 11.101. She sued a district-court judge and three now-former appellate-justice officeholders (all four collectively, the Judicial Defendants) for prospective injunctive and declaratory relief for alleged violations of her Fourteenth Amendment rights. The Judicial Defendants moved for a determination that she is a vexatious litigant, *see id.* §§ 11.051(1), 11.054, and that as a result of the determination, she should have to furnish security for the Judicial Defendants' benefit (security relief), *see id.* §§ 11.051(2), 11.055, and should be prohibited from filing *pro se* any new litigation in a Texas state court without first obtaining permission from the appropriate local administrative judge (pre-filing relief), *see id.* § 11.101(a), (e).

The trial court found her to be a vexatious litigant and entered two orders. In the first, the court found her to be a vexatious litigant and granted pre-filing relief (the First Order). In the second, the court found her to be a vexatious litigant and granted both pre-filing relief and security relief set at $5,000 (the Second Order). She appeals those two orders and "orders related thereto," while her claims for the alleged Fourteenth Amendment violations remain pending. In two appellate issues, each with subparts, she maintains that we should (1) abate this appeal and remand to the trial court for further proceedings and (2) reverse the First Order and Second Order. We affirm the portions of the orders that find her to be a vexatious litigant and that order pre-filing relief, decline to order the trial court to file findings of fact and conclusions of law, and lack jurisdiction to consider her remaining issues.

## BACKGROUND

Serafine once sued her neighbors and others over a property dispute. District Judge Karin Crump presided over proceedings in that suit, and when Serafine appealed, Justices Melissa Goodwin, Bob Pemberton, and David Puryear decided the appeal. Serafine, believing that the Judicial Defendants violated her Fourteenth Amendment rights during those proceedings, sued the Judicial Defendants in federal court, seeking prospective declaratory and injunctive relief. *See Serafine v. Crump*, 800 F. App'x 234, 235 (5th Cir. 2020) (per curiam). The federal district court dismissed the suit for lack of subject-matter jurisdiction, and the Fifth Circuit concluded that Serafine lacked standing to maintain her claims and thus dismissed her appeal. *Id*. at 236–39.

In May 2019, she initiated this state-court suit against the Judicial Defendants, asserting claims substantially identical to those in the federal suit.[1] In motions filed on December 4

---

[1] In fact, Serafine herself describes this state-court suit as "identical to the federal suit."

2

and 5, 2019, the Judicial Defendants moved for a determination that Serafine is a vexatious litigant and for security and pre-filing relief. The trial court held a hearing in December 2020 on the vexatious-litigant issues. Serafine argued that the court should not continue with the hearing and should refuse to find her to be a vexatious litigant. Counsel for the Judicial Defendants offered exhibits, which the trial court admitted into evidence, and argument in support of finding her to be a vexatious litigant. She also testified and offered exhibits of her own, which were admitted into evidence. After the hearing, the trial court found that she is a vexatious litigant and entered the First Order and Second Order. She then took this interlocutory appeal from the First Order, Second Order, and "orders related thereto."

## JURISDICTIONAL & THRESHOLD MATTERS

The Judicial Defendants raise several jurisdictional arguments, which we address first, and Serafine raises threshold matters of her own.

**I.      We have interlocutory jurisdiction to review the portions of the orders relating to pre-filing relief but no such jurisdiction over the security-relief portion.**

Serafine's notice of appeal encompasses the First Order, the Second Order, and "orders related thereto," but the Judicial Defendants maintain that we have jurisdiction for a vexatious-litigant interlocutory appeal only as it relates to an order granting pre-filing relief. Their arguments rest on the default rules governing our jurisdiction and on the vexatious-litigant statutes, Civil Practice and Remedies Code chapter 11 (Chapter 11).

A party may not take an interlocutory appeal unless authorized to do so by statute. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex. 1985) (orig. proceeding) (per curiam). Civil Practice and Remedies Code section 11.101(c) authorizes an interlocutory appeal from an order granting pre-filing relief. *See* Tex. Civ. Prac. & Rem. Code § 11.101(c) ("A litigant may

3

appeal from a prefiling order entered under Subsection (a) designating the person a vexatious litigant."); *Nunu v. Risk*, 567 S.W.3d 462, 466–67 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *Florence v. Rollings*, No. 02-17-00313-CV, 2018 WL 4140458, at *2–3 (Tex. App.—Fort Worth Aug. 30, 2018, no pet.) (mem. op.); *Margetis v. Bayview Loan Servicing, LLC*, 553 S.W.3d 643, 644 (Tex. App.—Waco 2018, no pet.). However, Chapter 11 does not authorize an interlocutory appeal from a security-relief order. *Silver v. State*, No. 03-19-00644-CV, 2019 WL 6139504, at *1 (Tex. App.—Austin Nov. 20, 2019, no pet.) (mem. op.); *Nunu*, 567 S.W.3d at 466. So, when a litigant takes an interlocutory appeal from an order that both finds the litigant to be vexatious and grants security and pre-filing relief, we have jurisdiction over the vexatious-litigant finding and the grant of pre-filing relief but not over the grant of security relief. *Nunu*, 567 S.W.3d at 463, 465–68; *Florence*, 2018 WL 4140458, at *2–4 & n.8.

Serafine explains that she is appealing the portions of the First Order and Second Order that find her to be a vexatious litigant and that grant pre-filing relief but is not "complain[ing] about that part of the . . . orders that is unappealable—the $5,000 security required to proceed with the case." To the extent her notice of appeal purports to appeal the Second Order's grant of security relief, we dismiss that portion of this appeal.

## II.    The trial court need not have filed findings and conclusions, and we lack jurisdiction to review its refusal to hear Serafine's motions.

The Judicial Defendants' next jurisdictional argument concerns Serafine's first appellate issue and a portion of her second, which themselves are threshold issues to decide before reaching the merits of the First Order and Second Order. In her first issue, she maintains that we should abate this appeal and remand to the trial court for it to (a) file findings of fact and conclusions of law in support of the First Order and Second Order, which Serafine requested but

4

the trial court by written order declined to do, and (b) hear her motion to dismiss under the Texas Citizens' Protection Act (TCPA) and her motion to change venue. In the relevant part of her second issue, she maintains that the court's refusal to hear her two motions is an independent ground on which we should reverse the First Order and Second Order.

The Judicial Defendants respond that we have no jurisdiction to do what Serafine asks because of the limited scope of review in this interlocutory appeal, which, they argue, encompasses only issues relating to the vexatious-litigant finding and award of pre-filing relief. Serafine responds that those issues, including every subsidiary question fairly included within them, *see* Tex. R. App. P. 38.1(f), present questions "that bear directly on the trial court's abuse of discretion in designating [her] as a vexatious litigant" and so "need resolution as part of adjudicating this main issue" in this interlocutory appeal. Relatedly, she argues that "'jurisdiction over [an] interlocutory appeal' includes 'those issues subsumed within it.'"

### A.     *Findings of fact and conclusions of law*

For interlocutory orders, "[t]he trial court need not file findings of fact and conclusions of law but may do so" within a certain time. Tex. R. App. P. 28.1(c); *see R & R Res. Corp. v. Echelon Oil & Gas, L.L.C.*, No. 03-05-00479-CV, 2006 WL 66458, at *4 (Tex. App.—Austin Jan. 10, 2006, no pet.) (mem. op.). Although findings and conclusions may be helpful in an interlocutory appeal, "they do not carry the same weight on appeal as findings made under rule 296, and are not binding when we are reviewing a trial court's exercise of discretion." *Tom James of Dall., Inc. v. Cobb*, 109 S.W.3d 877, 884 (Tex. App.—Dallas 2003, no pet.) (citing *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992) (orig. proceeding)); *accord R & R Res.*, 2006 WL 66458, at *4.

5

Abuse of discretion is the standard that governs review of vexatious-litigant orders. *Leonard v. Abbott*, 171 S.W.3d 451, 459 (Tex. App.—Austin 2005, pet. denied). In our review of the interlocutory orders here, "we must evaluate whether, viewing the evidence in the light most favorable to the trial court's order and indulging every reasonable inference in its favor, some evidence reasonably supports the trial court's decision," *see H2R Rest. Holdings, LLC v. Rathbun*, No. 05-17-00614-CV, 2017 WL 5197106, at *4 (Tex. App.—Dallas Nov. 10, 2017, no pet.) (mem. op.). Thus, findings and conclusions, even if helpful, would not change how we are to review the First Order and Second Order because review must focus on whether the court had before it evidence on which it could exercise its discretion. "Given that the trial court was not required to make findings of fact and conclusions of law, we cannot find an abuse of discretion in its failure to do so." *Linder v. Bell Cnty. Bail Bond Bd.*, No. 03-05-00710-CV, 2007 WL 437163, at *2 (Tex. App.—Austin Feb. 8, 2007, pet. denied) (mem. op.). We thus overrule the relevant portions of Serafine's first and second issues.

### B. TCPA motion and motion to change venue

As for whether the trial court erred by refusing to hear Serafine's TCPA motion and motion to change venue before entering the First Order and Second Order, we have no jurisdiction to review these interlocutory complaints.

We must strictly construe interlocutory-appeal statutes "because they are a narrow exception to the general rule that interlocutory orders are not immediately appealable." *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011). The rule of strict construction "implicates the breadth or narrowness" of a statute's application:

> Applying the rule of strict construction does not require that the statute shall be stintingly or even narrowly construed, but it means that *everything shall be*

6

*excluded from its operation which does not clearly come within the scope of the language used*. Thus, under the rule of strict construction, an appellate court must, like we do here, interpret a statute to have the narrowest application, even if that means adopting a broader definition of a particular term in the statute.

*In re Estate of Brazda*, 582 S.W.3d 717, 723 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (emphasis added) (quoting *Hovel v. Batzri*, 490 S.W.3d 132, 148–49 (Tex. App.—Houston [1st Dist.] 2016, pet. denied)); *accord Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex. 1969); *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 241 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.). "An appellate court's jurisdiction over an interlocutory appeal is limited to the scope permitted in the statute," and "[i]ssues outside that scope cannot be considered in the interlocutory appeal, even if presented in the same motion or other relief is granted in the same order." *Fawcett v. Rogers*, 492 S.W.3d 18, 29 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (internal citations omitted).

Serafine invokes our interlocutory jurisdiction under only Civil Practice and Remedies Code section 11.101(c), which allows a litigant to "appeal from a prefiling order entered under Subsection (a) designating the person a vexatious litigant." The statute, because it says nothing about the subject, does not authorize a litigant to obtain interlocutory review of a court's decision to hear a vexatious-litigant motion ahead of other motions, and we thus lack jurisdiction to review Serafine's arguments about her TCPA motion and motion to change venue. *See Paulsen v. Yarrell*, 455 S.W.3d 192, 195–96 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (court lacked interlocutory jurisdiction over denial of TCPA attorneys' fees because even though jurisdiction would otherwise exist for denial of related TCPA motion, denial of fees "was a distinct interlocutory ruling" on "a request . . . authorized by a separate provision" of the TCPA), *superseded by statute on other grounds*, Act of May 24, 2013, 83rd Leg., R.S., ch. 1042, § 4,

sec. 51.014(a)(12), 2013 Tex. Gen. Laws 2499, 2499–2500; *Kaplan v. Tiffany Dev. Corp.*, 69 S.W.3d 212, 217 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (court lacked interlocutory jurisdiction to review portion of order voiding foreclosure sale even though court had jurisdiction to review temporary-injunction portion of same order). We overrule the portions of Serafine's appeal that complain about the trial court's refusal to file findings of fact and conclusions of law and dismiss those portions that complain about the trial court's refusal to hear her other motions.

## SERAFINE'S APPELLATE ISSUES

We turn now to Serafine's arguments about the First Order and Second Order, by which she maintains that any of the following requires us to reverse: (1) the trial court should not have "quash[ed] [her] subpoenas"; (2) it should not have "considered . . . patently fabricated evidentiary exhibits"; (3) "no admissible evidence supported either prong of" the vexatious-litigant finding; (4) the court "purport[ed] to extend [Chapter 11's] seven-year period to eight years"; (5) she "was exempt from the statute"; and (6) the vexatious-litigant hearing, and thus the vexatious-litigant motions as well, should have been "barred as untimely."

Because a court may find a plaintiff to be a vexatious litigant only after making certain statutory predicate findings, the evidence to support those findings may be attacked for legal or factual insufficiency. *See Leonard*, 171 S.W.3d at 459. We review the court's ultimate determination that a plaintiff is a vexatious litigant under the abuse-of-discretion standard, *see Jones v. Anderson*, No. 14-16-00727-CV, 2018 WL 2012407, at *6 (Tex. App.—Houston [14th Dist.] May 1, 2018, pet. denied) (mem. op.); *Leonard*, 171 S.W.3d at 459, and the court's admission or exclusion of evidence also under the abuse-of-discretion standard, *see Jones*,

8

2018 WL 2012407, at *6. A court abuses its discretion when it rules "arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence." *Leonard*, 171 S.W.3d at 459.

## I. We lack jurisdiction over the denial of testimony from people subpoenaed, and the court did not abuse its discretion by overruling authenticity and relevance objections.

We now consider Serafine's arguments about what evidence the trial court should have considered. In her first of those, she argues that the court abused its discretion by quashing her subpoenas for live testimony at the vexatious-litigant hearing. Before the hearing, she subpoenaed the Judicial Defendants and a paralegal with the Travis County Attorney's office, and they all moved to quash the subpoenas. By separate orders, the trial court granted the Judicial Defendants' motions to quash, and then at the beginning of the vexatious-litigant hearing, the court required Serafine to proceed without testimony from the Judicial Defendants or from the paralegal. Those orders and the instruction at the beginning of the hearing are not part of the First Order's or Second Order's declaring Serafine a vexatious litigant and awarding pre-filing relief. Strictly construing Section 11.101(c), as we must, we conclude that the statute's grant of interlocutory jurisdiction for an "appeal from a prefiling order" does not give us jurisdiction to review the denials of testimony here, which were interlocutory rulings distinct from the vexatious-litigant finding and award of pre-filing relief. *See Estate of Brazda*, 582 S.W.3d at 723; *Paulsen*, 455 S.W.3d at 195–96; *Kaplan*, 69 S.W.3d at 217. We thus cannot consider that portion of Serafine's second issue.

Next, she maintains that the trial court should have excluded two exhibits offered by Judge Crump as evidence to show that Serafine had no reasonable probability of prevailing in this suit, one of the predicate findings necessary for a vexatious-litigant declaration, *see* Tex. Civ. Prac. & Rem. Code § 11.054: a June 2019 order that Judge Crump signed recusing herself from

9

any Travis County district-court case in which Serafine "is a party or an attorney of record" for all such cases "pending on the date of this Order" (Exhibit 3) and docket excerpts from the five then-pending cases showing the recusal order's entry in the records of those cases (Exhibit 5). We review a trial court's admission or exclusion of evidence under the abuse-of-discretion standard. *See Jones*, 2018 WL 2012407, at *6. A court abuses its discretion when it rules "arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence." *Leonard*, 171 S.W.3d at 459.

According to Judge Crump, by recusing herself from Serafine's cases, Serafine was in no danger of future injury from the judge and so lacked standing for her Fourteenth Amendment claims for prospective declaratory and injunctive relief. *Cf. Serafine*, 800 F. App'x at 238–39 (concluding that Serafine lacked standing for similar suit against same judge: because "there is little chance [Serafine] will appear, again, as a similarly situated party before Judge Crump," "there is not a substantial likelihood Serafine 'will again come into conflict with [Judge Crump] in circumstances similar to the ones presented here, and with the same results'" (quoting *Adams v. McIlhany*, 764 F.2d 294, 299 (5th Cir. 1985))).

Serafine objected that both exhibits were irrelevant and unauthenticated. *See generally* Tex. R. Evid. 401, 402, 901. The court overruled her objections and admitted the exhibits.

"Irrelevant evidence is not admissible." Tex. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Tex. R. Evid. 401. A trial court does not abuse its discretion by admitting evidence over a relevance objection when

the evidence is even just partially relevant to a fact of consequence. *See Morale v. State*, 557 S.W.3d 569, 574, 576 (Tex. 2018) (per curiam).

Both exhibits were relevant to the parties' arguments. Judge Crump was arguing that Serafine had no reasonable probability of prevailing on her claims against the judge because Judge Crump had recused herself from all then-pending cases in which Serafine was a party or attorney of record, making it highly unlikely that Serafine was in danger of any future injury that would be remedied by her requested prospective declaratory and injunctive relief. *See Serafine*, 800 F. App'x at 238–39. The trial court thus was within its discretion to determine that the exhibits were relevant and thus admissible.

As for the authentication objection, an exhibit is admissible only if it is properly authenticated. *Elness Swenson Graham Architects, Inc. v. RLJ II–C Austin Air, LP*, 520 S.W.3d 145, 158 (Tex. App.—Austin 2017, pet. denied). To authenticate an exhibit, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). One way to do this, as Judge Crump did here, is to produce "[e]vidence that . . . a document was recorded or filed in a public office as authorized by law." *See* Tex. R. Evid. 901(b)(7)(A). Both Exhibit 3 and Exhibit 5 were supported by an affidavit by a paralegal, who swore that he retrieved the recusal order and the docket excerpts by accessing them as they exist in the Travis County Courts Case Management System. The recusal order bears a stamp saying that it was filed with the Travis County District Clerk, and the docket excerpts bear headings showing that they originated in the District Clerk's office. These markings plus the affidavit testimony support the trial court's ruling that the exhibits were properly authenticated. *See Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020) (per curiam); *Luciano v. Slocum*, No. 11-17-00203-CV, 2019 WL 3023506, at *2 (Tex. App.—Eastland July 11, 2019, no pet.)

(mem. op.); *Morris v. Morris*, No. 12-17-00120-CV, 2018 WL 851361, at \*4 (Tex. App.—Tyler Feb. 14, 2018, no pet.) (mem. op.).

Serafine, however, argues that the exhibits are fabricated, but we are not persuaded that the trial court abused its discretion. First, she notes that the recusal order bears a cause number and case caption matching this suit's but not those of any of the four other pending cases from which Judge Crump sought to recuse herself. Serafine infers from this that the order is ineffective as to the other four cases. She further asserts that the order is ineffective in this case because the signature line includes the notation "Presiding Judge" and Judge Crump cannot be a presiding judge in this suit because she is a party to it. Serafine thus concludes that the recusal order is "a fabricated document" and that Judge Crump's recusal from any of the five cases "never occurred." Because the order is a "sham" in Serafine's view, filing the same order in all five cases did not effect the judge's recusal, causing the "recusal" notations on the docket excerpts to be fabrications as well.

These arguments concern the legal effectiveness of the order, which we discuss below, not its admissibility. Irrespective of the recusal order's legal effectiveness, the trial court was within its discretion to conclude that the order and docket excerpts were what they purported to be. *See Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam) ("The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision."); *accord Roper v. CitiMortgage, Inc.*, No. 03-11-00887-CV, 2013 WL 6465637, at \*9 (Tex. App.—Austin Nov. 27, 2013, pet. denied) (mem. op.). We thus overrule the relevant portion of Serafine's second issue.

12

**II.    The court did not abuse its discretion by finding Serafine to be a vexatious litigant, including because the necessary showings were supported by sufficient evidence.**

We next consider Serafine's arguments on the merits of the vexatious-litigant finding. The purpose of the vexatious-litigant statutes is to "is to restrict frivolous and vexatious litigation" and to protect defendants "from those who abuse our civil justice system." *Leonard*, 171 S.W.3d at 455, 457. Before a court may find that a plaintiff is a vexatious litigant, the defendant seeking the finding must show both (1) "that there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant" in which the defendant files the vexatious-litigant motion, *see* Tex. Civ. Prac. & Rem. Code § 11.054; *Thoele v. Texas Bd. of Pardons & Paroles*, No. 03-19-00826-CV, 2021 WL 1800175, at *1–2 (Tex. App.—Austin May 6, 2021, no pet.) (mem. op.), and (2) that the plaintiff, "in the seven-year period immediately preceding the date the defendant ma[de] the [vexatious-litigant] motion . . . , has commenced, prosecuted, or maintained at least five litigations as a pro se litigant other than in a small claims court that have been . . . finally determined adversely to the plaintiff," *see* Tex. Civ. Prac. & Rem. Code § 11.054(1)(A). On appeal, the plaintiff may attack the legal and factual sufficiency of the evidence supporting either showing. *See Leonard*, 171 S.W.3d at 459.

**A.    *There is not a reasonable probability that Serafine will prevail in this suit because she lacks standing for her claims for relief.***

We review the trial court's ruling on the reasonable-probability showing for an abuse of discretion. *Jackson v. Bell*, 484 S.W.3d 161, 166 (Tex. App.—Amarillo 2015, no pet.) (citing *Devoll v. State*, 155 S.W.3d 498, 502 (Tex. App.—San Antonio 2004, no pet.)). When deciding whether a defendant has made the required showing, the court may consider exhibits and testimony, *see* Tex. Civ. Prac. & Rem. Code § 11.053(b), or may decide the issue based on the plaintiff's pleadings, *see Thoele*, 2021 WL 1800175, at *2; *Jackson*, 484 S.W.3d at 163–64, 166–

13

67; *In re Kim*, No. 03-09-00113-CV, 2009 WL 1653856, at *2 (Tex. App.—Austin June 2, 2009, orig. proceeding [mand. denied]) (mem. op.); *Leonard*, 171 S.W.3d at 460; *see also Thoele*, 2021 WL 1800175, at *3 ("[A] trial court is 'presumed to judicially know what has previously taken place in the case tried before it,' and where the record is silent (as here), 'may be presumed to have taken judicial notice of the records in the court's file without any request being made and without an announcement in the record that it has done so.' '[W]e may presume that a trial court took judicial notice of the file even if there is no record that the trial court did so expressly.'" (internal citations omitted) (first and second quotes from *In re J.E.H.*, 384 S.W.3d 864, 869–70 (Tex. App.—San Antonio 2012, no pet.), and third from *Iqbal v. Federal Nat'l Mortg. Ass'n*, No. 03-15-00667-CV, 2017 WL 2856737, at *3 (Tex. App.—Austin June 29, 2017, pet. denied) (mem. op.))). The court may even consider the plaintiff's pleadings that were filed in the suit after the defendant filed the vexatious-litigant motion. *See Connor v. Hooks*, No. 03-19-00198-CV, 2021 WL 833971, at *4–5 & n.7 (Tex. App.—Austin Mar. 5, 2021, pet. struck) (mem. op.) (plaintiff's nonsuit with prejudice, filed after defendant's vexatious-litigant motion was filed, alone supported trial court's ruling that there was not a reasonable probability that plaintiff will prevail). A plaintiff's lack of standing to bring his or her claims alone can establish that there is not a reasonable probability that the plaintiff will prevail in the litigation. *Drake v. Willing*, No. 03-14-00665-CV, 2015 WL 5515903, at *5 & n.7 (Tex. App.—Austin Sept. 16, 2015, no pet.) (mem. op.); *Kim*, 2009 WL 1653856, at *2.

The Judicial Defendants advanced several theories for why there is not a reasonable probability that Serafine will prevail in this suit, including that nothing in Serafine's pleadings suggests that the complained-of conduct by the Judicial Defendants "is currently happening or will be repeated in the future."

14

Standing is a constitutional prerequisite to suit. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). Texas standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that the court can resolve. *Id.* at 154.

When plaintiffs seek prospective remedies—for example, declaratory or injunctive relief applying only prospectively—they may lack the "requisite injury-in-fact" necessary to support standing if they no longer "face[] an imminent deprivation" of the rights whose alleged violation supports the need for the prospective remedies sought. *See id.* at 160. For example, "alleged prior deprivations of [a plaintiff's] right to open-court proceedings cannot provide a basis for [a] claim for prospective relief." *See id.*; *accord Garcia v. City of Willis*, 593 S.W.3d 201, 207–08 (Tex. 2019) (plaintiff lacked standing for prospective relief enjoining use of red-light cameras because he alleged only past injury and not also that he planned to again violate traffic laws within sight of cameras).

Similarly here, Serafine alleges violations of her Fourteenth Amendment rights by the Judicial Defendants in past court proceedings. She alleges that the defendants, for example, deprived her of notice and the right to be heard, prevented her from putting on evidence, deprived her of public proceedings, refused to rule on her motions, tampered with court records, and allowed perjury. The Judicial Defendants explain that, like in *Heckman*, these allegations do not support standing to seek prospective declaratory and injunctive relief because the Judicial Defendants are unlikely again to act as judges in proceedings involving Serafine.

As discussed above, Judge Crump offered as evidence Exhibit 3 and Exhibit 5, which she offered to show her recusal from then-pending cases involving Serafine. Judge Crump also offered Exhibit 2—a letter from the Travis County Local Administrative Judge discussing Judge Crump's recusal from one of the cases and stating that Judge Crump "has recused herself

15

from any further action in this matter" and so "will not decide the remanded issues," with the case then on remand in the trial court. The trial court admitted Exhibit 2 into evidence.

The procedures for recusal on a party's motion can differ from those for recusal on a judge's own motion. *Compare generally* Tex. R. Civ. P. 18a, 18b (on party's motion), *with* Tex. Gov't Code § 24.002 (on court's own motion). When a judge who is the target of a recusal motion grants it, the applicable statute requires that the order must be "sign[ed] and file[d] with the clerk," Tex. R. Civ. P. 18a(f)(1)(A); whereas, when a judge recuses on his or her own motion, the applicable rule says that the "recusal order" must be "enter[ed]," Tex. Gov't Code § 24.002. But neither the rule nor the statute sets out a prescribed format for the written order, and when interpreting court orders, we avoid elevating form over substance, *see Texas Dep't of Pub. Safety v. J.H.J.*, 274 S.W.3d 803, 810–11 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Oryx Energy Co. v. Union Nat'l Bank of Tex.*, 895 S.W.2d 409, 417 (Tex. App.—San Antonio 1995, writ denied). Serafine's arguments, by contrast, would require us to do just that. We conclude that despite the recusal order's caption and cause number, its filing in the other four suits was effective to recuse Judge Crump from those suits. And despite the order's signature-line notation that Judge Crump signed it as "Presiding Judge" even though she is a party in this suit, we conclude that she effectively recused herself from acting as judge in this suit.

With Judge Crump's recusal from any then-pending suit involving Serafine thus in place, and evidence of the recusal in the forms of Exhibit 2, Exhibit 3, and Exhibit 5 admitted at the hearing, the trial court could have reasonably concluded that Serafine likely would not in the future undergo the alleged deprivations of rights of which she complained, which means that Serafine lacks standing to maintain her claims for prospective declaratory and injunctive relief against Judge Crump. *See Heckman*, 369 S.W.3d at 160. Because she lacks standing for those

16

claims, the trial court could reasonably have concluded that there was no reasonable probability that Serafine would prevail in her suit against Judge Crump. *See* Tex. Civ. Prac. & Rem. Code § 11.054; *Jackson*, 484 S.W.3d at 166.

As for former appellate justices Puryear and Pemberton, Serafine's live pleadings themselves identify those two defendants as former officeholders. Based on Serafine's own pleadings, *see Thoele*, 2021 WL 1800175, at *2–3; *Jackson*, 484 S.W.3d at 163–64, 166–67; *Kim*, 2009 WL 1653856, at *2; *Leonard*, 171 S.W.3d at 460, the trial court could reasonably have concluded that Serafine would not be subject to "alleged deprivations again in the future" caused by those defendants, which means that Serafine lacks standing for her claims against them, *see Heckman*, 369 S.W.3d at 160. The trial court was thus within its discretion to make the reasonable-probability finding against Serafine regarding Justices Puryear and Pemberton.

Finally, for Justice Goodwin, who at the time of the hearing held office as an appellate justice, the trial court was within its discretion to infer from the district judge's recusal order that Justice Goodwin would similarly recuse in similar situations—those when Serafine appears before the judge as a party or attorney of record.[2] *See Unifund CCR Partners*, 299 S.W.3d at 97 ("The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision."); *accord Aubrey v. Aubrey*, 523 S.W.3d 299, 309

---

[2] This very appeal is such a case, and Justice Goodwin while she still held office indeed recused herself from this appeal. In a March 21, 2021 letter, and in response to Serafine's motion for recusal, our Clerk notified the parties that Justice Goodwin had recused herself. We take judicial notice of the recusal. *See* Tex. R. Evid. 201(b)(2), (c)(1), (d); *Tafel v. State*, 536 S.W.3d 517, 523 (Tex. 2017) (per curiam) (appellate court may take judicial notice of a fact if it is one that could be properly judicially noticed by a trial court); *Office of Pub. Util. Couns. v. Public Util. Comm'n*, 878 S.W.2d 598, 600 (Tex. 1994) (per curiam) (applying Rule of Evidence 201 to appellate court's ability to take judicial notice). We also take judicial notice that Justice Goodwin no longer holds the office that she then held.

17

(Tex. App.—Dallas 2017, no pet.); *see also Zeifman v. Michels*, No. 03-12-00114-CV, 2013 WL 4516082, at \*6 (Tex. App.—Austin Aug. 22, 2013, no pet.) (mem. op.) (abuse-of-discretion review requires crediting trial court's decision with the reasonable inferences that court could have drawn from the evidence). The trial court thus was within its discretion to, as with Judge Crump, decide against Serafine on the reasonable-probability showing for Justice Goodwin.

Although Serafine argues that no evidence supported the reasonable-probability ruling,[3] the Judicial Defendants offered several such exhibits, including Exhibit 2, Exhibit 3, Exhibit 5, and the exhibit of the Fifth Circuit's *Serafine* opinion. Serafine argues that the Fifth Circuit opinion should not sway our standing analysis because the dismissal of her federal suit, which raised substantially identical claims to the claims she raises here, was without prejudice. Regardless of the federal courts' reasoning, however, we conclude that Serafine's lack of standing to bring her claims in this suit establishes that there is not a reasonable probability that she will prevail. *See Drake*, 2015 WL 5515903, at \*5 & n.7; *Kim*, 2009 WL 1653856, at \*2. As it happens, the Fifth Circuit's standing analysis resembles ours, *see Serafine*, 800 F. App'x at 237–39, and the Supreme Court of Texas has instructed that Texas standing doctrine should parallel its federal analogue, *see Texas Propane Gas Ass'n v. City of Houston*, 622 S.W.3d 791, 799 (Tex. 2021).[4]

---

[3] Serafine's briefing makes no argument that the evidence was *factually* insufficient to support the reasonable-probability ruling. She does raise a factual-insufficiency argument on the second required showing to support a vexatious-litigant finding, which we address below.

[4] Because Serafine describes her suit here as "identical to the federal suit," it then should be no surprise that an identical suit that lacks standing under federal doctrine also would lack standing under Texas's parallel doctrine.

In sum, we hold that the trial court did not abuse its discretion by ruling that there was not a reasonable probability that Serafine would prevail in this suit. We thus overrule the relevant portion of her second issue.

**B.** ***There was sufficient evidence of at least five litigations under Civil Practice and Remedies Code section 11.054(1)(A).***

Serafine lodges several challenges to the finding that she, in the seven-year period preceding December 4, 2019—the date that certain of the Judicial Defendants filed their vexatious-litigant motion—"has commenced, prosecuted, or maintained at least five litigations as a pro se litigant other than in a small claims court that have been . . . finally determined adversely to" her. *See* Tex. Civ. Prac. & Rem. Code § 11.054(1)(A). Serafine argues that the evidence was legally and factually insufficient to support that finding and that much of the evidence offered by the Judicial Defendants is irrelevant because it is from outside the seven-year period.

At the vexatious-litigant hearing, certain of the Judicial Defendants offered the following exhibits:

(A) a February 16, 2018 denial of Serafine's motion for rehearing in *Serafine v. Blunt*, No. 17-0597, in the Supreme Court of Texas;

(B) a December 1, 2017 denial of Serafine's petition for review in *Serafine v. Blunt*, No. 17-0597, in the Supreme Court of Texas;

(C) a September 24, 2014 final judgment that Serafine take nothing in *Serafine v. Branaman*, Cause No. A-11-CV-1018-LY, in the United States District Court for the Western District of Texas;

(D) a January 12, 2016 opinion explaining the affirmance in part and reversal and remand in part of that final judgment, in *Serafine v. Branaman*, No. 15-51151, in the United States Court of Appeals for the Fifth Circuit;

(E) a July 30, 2018 order and final judgment dismissing for lack of subject-matter jurisdiction Serafine's complaint in *Serafine v. Crump*, Cause

19

No. A-17-CV-1123-LY, in the United States District Court for the Western District of Texas;

(F) a May 19, 2017 opinion explaining the affirmance in part and reversal and remand in part of a final judgment that Serafine take nothing by her claims, in *Serafine v. Blunt*, No. 03-16-00131-CV, in the Court of Appeals of Texas for the Third District;

(G) a December 5, 2014 summary denial of relief to Serafine in her original proceeding *In re Serafine*, No. 03-14-00775-CV, in the Court of Appeals of Texas for the Third District;

(H) a March 22, 2019 summary order denying Serafine's petition for writ of mandamus in *In re Serafine*, No. 19-50183, in the United States Court of Appeals for the Fifth Circuit;

(I) a February 6, 2020 opinion, discussed above, explaining the dismissal of Serafine's appeal in *Serafine v. Crump*, No. 18-50719, in the United States Court of Appeals for the Fifth Circuit; and

(J) an October 19, 2020 denial of Serafine's petition for writ of certiorari in *Serafine v. Crump*, No. 20-192, in the Supreme Court of the United States.

### 1.    *Challenge based on the definition of "*pro se*"*

Her first challenge turns on what it means to commence, prosecute, or maintain a litigation *pro se*, as the terms are used in Chapter 11, with Serafine arguing that the Judicial Defendants offered no evidence that she was *pro se* in any of the ten purported litigations.

As an initial matter, the no-evidence challenge fails as to the purported litigations represented by exhibits F, G, and I. Each of those exhibits expressly identifies Serafine as having proceeded *pro se* in the respective litigation. Also with the exhibit I litigation, the 2019 appeal to the Fifth Circuit, Serafine herself succeeded in entering as evidence (i) another version of the same opinion, which itself identifies her as having proceeded *pro se*; (ii) the notice from the Fifth Circuit's Clerk addressed to Serafine, among others, which transmitted the Court's denial of rehearing in the appeal and suggests that she was proceeding *pro se* because the notice was

addressed to her like it would be to any attorney in the case; and (iii) her Fifth Circuit brief, showing only her name in the signature block as attorney. *See Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018) (legal-sufficiency review requires review of "[a]ll the record evidence" in the light most favorable to the prevailing party); *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied) ("In determining whether there is legally sufficient evidence to support the finding under review, we examine the record for evidence and inferences that support the challenged finding, while disregarding all contrary evidence and inferences. We must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not."). As a result, Serafine's no-evidence challenge based on *pro se* status could eliminate only the purported separate litigations represented by exhibits A, B, C, D, E, H, and J.

Serafine's and the Judicial Defendants' competing arguments over what "*pro se*" means in Chapter 11 present us with a binary choice—either that statutory term requires that a litigant be "without the benefit of a lawyer" to qualify as *pro se*, which is Serafine's view, or lack of an attorney is not required for a litigant to qualify as *pro se* (even if lack of an attorney might suffice for proving that a litigant is *pro se*), which is the Judicial Defendants' view. Serafine testified that she was assisted by "co-counsel" or by "limited-scope counsel" in the purported litigations and thus could not have been *pro se*—she had the benefit of a lawyer at all times. The Judicial Defendants' counter is that "*pro se*" can refer to a litigant's representing herself, no matter whether they are also represented by an attorney for any part of the same proceeding or suit.

Texas courts applying Chapter 11 have used both formulations of "*pro se*"—lack of an attorney has sometimes been merely an alternative meaning of the term and at other times has been a necessary component of the term's definition. *Compare 1901 NW 28th St. Tr. v. Lillian*

21

*Wilson, LLC*, 535 S.W.3d 96, 99 (Tex. App.—Fort worth 2017, no pet.) (defining "*pro se*" as "[f]or oneself; on one's own behalf; without a lawyer" (quoting *Pro se*, Black's Law Dictionary (10th ed. 2014)), *with Spiller v. Spiller*, 21 S.W.3d 451, 454 (Tex. App.—San Antonio 2000, no pet.) (defining "*pro se*" as when "a litigant represents himself or herself without the benefit of a lawyer" (citing *Pro se*, Black's Law Dictionary (5th ed. 1979))). Some more of the prominent dictionary definitions support the view that lack of an attorney is not a necessary component of the definition. *See Pro se*, Black's Law Dictionary (9th ed. 2009) ("For oneself; on one's own behalf; without a lawyer."); *Pro se*, Black's Law Dictionary (6th ed. 1990) ("For one's own behalf; in person. Appearing for oneself, as in *the case* of one who does not retain a lawyer and appears for himself in court." (emphasis added)). We will apply the definition exemplified by *1901 NW 28th Street Trust* and many dictionaries and hold that even if proof that a litigant is without an attorney suffices to prove that the litigant is *pro se*, proving the litigant's lack of an attorney is not necessary to prove that the litigant is *pro se*.

Applying this definition, we first conclude that there was not legally sufficient evidence about the purported separate litigations represented by exhibits C or J. Those exhibits do not suggest that Serafine commenced, maintained, or prosecuted any of those purported litigations for herself, and no other testimony or exhibits in the record suggest so either. Thus, the purported separate litigations represented by those two exhibits cannot be counted under Section 11.054(1).[5]

---

[5] During the vexatious-litigant hearing, when counsel for the appellate-justice Judicial Defendants presented argument about these two exhibits, counsel simultaneously showed the court a slide-deck presentation that may have included screenshots of filings by Serafine in the litigations represented by the exhibits. This material, however, is not in the clerk's record or reporter's record for this appeal. Whatever it may have shown, it is not before us for consideration. *DeLeon v. Lacey*, No. 03-13-00292-CV, 2015 WL 4449436, at *4 (Tex. App.—Austin July 15, 2015, no pet.) (mem. op.) ("[E]vidence that was not admitted into the record cannot inform an evidentiary-sufficiency analysis.").

For the remaining purported litigations, there was legally sufficient evidence that Serafine commenced, maintained, or prosecuted them *pro se*. As mentioned above, in the exhibit F, G, and I purported litigations, there was legally sufficient evidence that she maintained them *pro se* because the exhibits themselves identify her as *pro se*.

As for exhibits A and B, those documents show the Supreme Court's actions on a petition for review filed by Serafine, seeking review of this Court's opinion and judgment in cause number 03-16-00131-CV, and a related motion for rehearing of the denial of the petition for review. Serafine's exhibits, admitted at the hearing, indicate that she filed the petition for review and motion for rehearing *pro se*: she offered into evidence at the vexatious-litigant hearing amicus briefs in support of her petition for review and her motion for rehearing, including certificates of service listing her as a recipient and as attorney for herself in the proceeding, and the Supreme Court's notice—addressed to her—that her motion for rehearing had been denied. Serafine's own exhibits thus support the reasonable inference that she maintained the purported separate litigations represented by exhibits A and B *pro se*.

For exhibit D, she testified during the hearing that she "did sign her own papers at the Fifth Circuit, . . . as we have already seen" from the Judicial Defendants' slide-deck presentation. She testified later again that she "signed her own paper." Her testimony supports the reasonable inference that she maintained the exhibit D litigation in the Fifth Circuit *pro se*.

For exhibit E, she attached to her written response to the vexatious-litigant motions an exhibit of the federal magistrate judge's report and recommendation in *Serafine v. Crump*, Cause No. A-17-CV-1123-LY, in the United States District Court for the Western District of Texas. This was the report and recommendation that the federal district court adopted, as reflected in the Judicial Defendants' exhibit E. The report and recommendation described Serafine as "an

attorney representing herself"; therefore, her own filed exhibit included evidence from which the trial court reasonably could infer that she maintained the exhibit E litigation *pro se*. *See Thoele*, 2021 WL 1800175, at *3 ("[A] trial court is 'presumed to judicially know what has previously taken place in the case tried before it,' and where the record is silent (as here), 'may be presumed to have taken judicial notice of the records in the court's file without any request being made and without an announcement in the record that it has done so.' '[W]e may presume that a trial court took judicial notice of the file even if there is no record that the trial court did so expressly.'" (internal citations omitted) (first and second quotes from *J.E.H.*, 384 S.W.3d at 869–70, and third from *Iqbal*, 2017 WL 2856737, at *3)).

Finally, for the exhibit H mandamus proceeding, Serafine offered as evidence her brief to the Fifth Circuit, which was admitted, and both its cover page and signature page identify her alone as the author. This shows that she maintained that purported litigation *pro se*.

As for factual sufficiency, the only contrary evidence is Serafine's testimony and exhibits tending to show that she had retained counsel for all times relevant to almost all of the ten purported litigations. We consider the evidence that we have summarized above as sufficient to show that the trial court's rulings about Serafine's *pro se* status were not against the overwhelming weight of the evidence. We thus overrule in part and sustain in part Serafine's challenge based on the "*pro se*" definition, with the result that exhibits C and J are not legally sufficient evidence that Serafine was *pro se* in those two purported separate litigations.

2.      *Challenge based on which purported litigations are separately countable*

Serafine's next challenge concerns whether the exhibit A, B, and F purported litigations can be counted separately from one another or must instead collectively be considered

24

only one "litigation" and concerns the same issue with respect to exhibits E and I.[6]  She argues that exhibits A, B, and F concern appellate proceedings that all stem from one trial-court judgment and thus are not separate.  The Judicial Defendants respond that the exhibit A purported litigation and the exhibit B purported litigation may be counted separately from each other and from the exhibit F litigation because separate litigations may be maintained in both a trial court and an appellate court even if the litigation in the appellate court is an appeal of the outcome in the trial court.  We must decide whether, under Section 11.054(1), proceedings related to a motion for rehearing in the Supreme Court of Texas, those related to a petition for review in the Court, and those related to the intermediate-court judgment from which the proceedings in the Supreme Court stem may count as separate "litigations."

Regarding exhibits E and I, the parties' competing arguments apply with equal force.  But in the situation of exhibits E and I, the first purported separate litigation is in a trial court, and the second is the appeal in the court of appeals arising out of the first.  The relevant statutory definition of "litigation" is that it "means a civil action commenced, maintained, or pending in any state or federal court."  Tex. Civ. Prac. & Rem. Code § 11.001(2).

Neither the Supreme Court of Texas nor our Court has answered the statutory-interpretation confronting us.[7]  From the other courts of appeals who have answered the

---

[6]  This challenge also would have concerned exhibits C and D as a single litigation, but we need not reach it as concerns those exhibits because we have already concluded that the purported separate litigation represented by exhibit C cannot count by itself because there was no evidence that it, as a separate litigation, involved Serafine's commencing, maintaining, or prosecuting it *pro se*.  The same is true for the purported separate litigation represented by exhibit J insofar as it could represent a litigation separately countable from exhibits E and I.

[7]  Serafine argues that we did answer the question in *Leonard v. Abbott*, but we disagree.  There, we indeed counted trial-court proceedings to judgment and their related appeals as single

25

question, things are inconclusive because two decisions support the Judicial Defendants' position, and a third supports Serafine's.[8]

A "litigation" here "means a civil action commenced, maintained, or pending in any state or federal court," Tex. Civ. Prac. & Rem. Code § 11.001(2), so not only must we define "civil action commenced, maintained, or pending," but we must also consider how "litigation" is used in the context of the rest of Chapter 11. Chapter 11's use of "civil action" was enacted in 1997. *See* Act of May 23, 1997, 75th Leg., R.S., ch. 806, §§ 1, 2, sec. 11.001(2), 1997 Tex. Gen. Laws 2634, 2634–36. A prominent dictionary then defined "civil action" as an "[a]ction brought to enforce, redress, or protect private rights" and, "[i]n general, all types of actions other than criminal proceedings." *Civil Action*, Black's Law Dictionary (6th ed. 1990). It also defined

---

litigations rather than as separate ones. *See Leonard v. Abbott*, 171 S.W.3d 451, 459–60 (Tex. App.—Austin 2005, pet. denied). But we did not say that we *must* do so or that all appellate-court litigation stemming from a single trial-court judgment must be similarly counted. Even under the more plaintiff-friendly counting method, the *Leonard* litigant still surpassed the five-litigation threshold.

[8] In the decision in Serafine's favor, while the Fourth Court otherwise reasoned that two purported litigations did not meet Chapter 11's requirements because there was no evidence that the plaintiff had been *pro se*, the court added this language favorable to Serafine's position: "An appeal of a judgment in a civil action is not a separate 'litigation' as that word is used in Chapter 11. Rather, the Fifth Circuit order simply satisfies [defendant]'s burden to establish the litigation was finally determined against" plaintiff. *Goad v. Zuehl Airport Flying Cmty. Owners Ass'n*, No. 04-11-00293-CV, 2012 WL 1865529, at *3 n.3 (Tex. App.—San Antonio May 23, 2012, no pet.) (mem. op.). The Fourth Court, however, has since rejected an argument like Serafine's: "[Litigant] contends the eight matters constitute only three litigations because the matters that concern the same probate proceeding should be considered as one litigation. . . . The statute does not specify that matters involving the same case should be considered one litigation, and we decline to do so." *In re Estate of Aguilar*, No. 04-16-00504-CV, 2018 WL 1176649, at *6 (Tex. App.—San Antonio Mar. 7, 2018, no pet.) (mem. op.). The court in *Estate of Aguilar* cited as support a case in which the Eighth Court of Appeals concluded that three interlocutory appeals and three original proceedings, all stemming from the same trial-court case, could be counted as six separate litigations because "appeals and original proceedings filed by a litigant are included in the number of proceedings to be counted against a litigant." *See Restrepo v. Alliance Riggers & Constructors, Ltd.*, 538 S.W.3d 724, 751–52 (Tex. App.—El Paso 2017, no pet.).

"action," "in its usual legal sense," as "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law." *Action*, Black's Law Dictionary (6th ed. 1990). Another dictionary included in its definitions of "civil": "relating to private rights and to legal proceedings in connection with them: relating to rights and remedies sought by action or suit distinct from criminal proceedings," such as "a [civil] suit." *Civil*, Webster's Third New International Dictionary of the English Language Unabridged 412–13 (2002). And its definition of "action" included: "a legal proceeding by which one demands or enforces one's right in a court of justice." *Action*, Webster's Third New International Dictionary of the English Language Unabridged 21 (2002). Drawing from these dictionary definitions, we will apply to Chapter 11 this definition of "civil action": a suit (including in law, equity,[9] or admiralty), appeal,[10] or original proceeding[11] brought in a court when the suit, appeal, or original proceeding is not criminal in nature.

Under our definition, we conclude that the purported litigations represented by exhibits A and B do not constitute separately countable litigations but that the litigation represented by both exhibits A and B does constitute a litigation separately countable from that represented by exhibit F. With exhibits A and B—proceedings on the motion for rehearing of the petition for review and those on the same petition for review, all in the Supreme Court of Texas—the motion for rehearing, if successful, would have led to a new decision on the petition for review. Serafine's lack of rehearing success means that something was determined adversely to her, but it does not

---

[9] *See Dolenz v. Boundy*, No. 05-08-01052-CV, 2009 WL 4283106, at *2 (Tex. App.—Dallas Dec. 2, 2009, no pet.) (mem. op.) ("[A] bill of review proceeding is subject to the vexatious litigant statute.").

[10] *See Restrepo*, 538 S.W.3d at 751–52; *Retzlaff v. GoAmerica Commc'ns Corp.*, 356 S.W.3d 689, 699–700 (Tex. App.—El Paso 2011, no pet.).

[11] *See Restrepo*, 538 S.W.3d at 751–52; *Retzlaff*, 356 S.W.3d at 700.

require that we view the thing that was adversely determined as a new litigation. Further, exhibits A and B both bear the same Supreme Court case number, which is some indication that the Court would view rehearing proceedings on a petition for review as within the same set of proceedings as those related to the petition for review itself in the first instance.

But the same features are not necessarily present when comparing the litigation in the Supreme Court to the earlier litigation in our Court. Traveling through separate courts brought with it separate case numbers. Indeed, the statutory definition's guidance that a "civil action" be something "commenced, maintained, or pending *in any state or federal court*," *see* Tex. Civ. Prac. & Rem. Code § 11.002(2), suggests that leaving one court for another leads to a new "litigation." Also, success for Serafine in the exhibit A/B litigation would not necessarily have led to a new decision in our Court on the exhibit F litigation; instead, it might have been the case that nothing more would need to be done in our Court on any topic or that the Supreme Court could have remanded to our Court or to the trial court for consideration of new issues. Such possible outcomes would not necessarily be relitigating the exhibit F litigation. We thus conclude that there is insufficient evidence of separately countable litigations as between exhibits A and B but that there is legally sufficient evidence of separately countable litigations as between, on the one hand, exhibits A and B and, on the other, exhibit F. As for factual sufficiency, the only evidence contrary to this was Serafine's testimony that the litigations were not separate at all, but we conclude that the evidence that we have summarized above means that the trial court's rulings were not against the overwhelming weight of the evidence.

A similar analysis drives our conclusion about exhibits E and I. The litigations represented by the two may be counted separately even though the exhibit I appeal was from the judgment reached in the exhibit E litigation in the trial court. At least one of our sister courts has

concluded that counting multiple appeals (and original proceedings) arising out of the same suit in a trial court does not offend Chapter 11. *See Restrepo*, 538 S.W.3d at 751–52. That court's conclusion finds support in the relevant statutory definition when it defines "litigation" by reference to civil actions "in *any* state or federal court." Tex. Civ. Prac. & Rem. Code § 11.001(2) (emphasis added). In line with *Restrepo*, the exhibit E and exhibit I purported litigations may be counted separately from each other.[12]

To this point in our analysis, seven purported litigations remain—those represented by exhibits A/B, D, E, F, G, H, and I.

### 3. Challenge based on mandamus petitions' relatedness to the merits of their underlying cases

Serafine's next challenge is like her last but concerns original proceedings' countability separate from the litigation that includes the judicial acts that the original proceedings attack. She argues that exhibits G and H—a mandamus proceeding in our Court and one in the Fifth Circuit—may not constitute separately countable litigations because, she argues while seizing upon language in *Retzlaff v. GoAmerica Commc'ns Corp.*, only if a mandamus petition "'did not challenge the trial court's final decision in the underlying case or relate to the merits of the underlying case' [can] the petition for mandamus . . . count toward the total number of litigations determined adversely." *See* 356 S.W.3d 689, 700 (Tex. App.—El Paso 2011, no pet.).

We will not read into the statutes the kind of merits exception for original proceedings that Serafine calls for. It is enough to say, as the courts in both *Retzlaff* and *Restrepo* at least implied, that an original proceeding is a separate civil action. *See Restrepo*, 538 S.W.3d

_____

[12] As we said above, *Leonard* does not compel a contrary conclusion. We were not there faced with the question that this case presents.

29

at 751–52 (concluding that evidence of "three original proceedings related to the [same] underlying civil case" there constituted evidence sufficient to support finding that the three were "litigations"); *Retzlaff*, 356 S.W.3d at 700 ("[A] person who seeks mandamus relief commences a civil action in the appellate court."). We reject this challenge.

### 4. *Challenge based on the statute's "finally determined adversely" language*

Serafine's next challenge is that some of the purported litigations may not count because they were not "finally determined adversely to" her. *See* Tex. Civ. Prac. & Rem. Code § 11.054(1)(A). For the exhibit D litigation, she argues that it was not determined adversely to her because she won in the Fifth Circuit what she sought by that litigation—a holding that portions of Texas's Psychologists' Licensing Act were unconstitutional. And for the exhibit A/B, E, F, and I litigations, she argues that they were not finally determined at all because further necessary proceedings had yet to take place in those litigations when this suit's vexatious-litigant motions were filed and thus were not final within the statute's seven-year period. *See id.* § 11.054(1) ("the plaintiff, in the seven-year period immediately preceding the date the defendant makes the motion under Section 11.051, has commenced, prosecuted, or maintained at least five litigations . . . ").

The Judicial Defendants' response on the exhibit D litigation is in a sense the mirror image of Serafine's position: while she argues that any partial success by a party in a litigation prevents it from being a litigation "finally determined adversely" to that party, they argue that any partially adverse outcome for a party in a litigation makes the litigation "finally determined adversely" to the party. As for the argument from the seven-year period about exhibits A/B, E, F, and I, Judge Crump responds that "[a]lthough these actions were not finally determined when Appellees filed their vexatious litigant motions, they were commenced preceding these motions,

30

therefore the district court did not abuse its discretion by including Appellant's appeal and writ actions when considering her a vexatious litigant under Section 11.054(1)."

We conclude that the exhibit D litigation was not finally determined adversely to Serafine. The only adverse determination there to which the Judicial Defendants point is the Fifth Circuit's "affirming [the] lower court's take nothing judgment against Serafine for her prior-restraint claim." But within exhibit D itself—the Fifth Circuit's opinion—the court described the prior-restraint theory as an alternative to Serafine's overbreadth theory. The opinion explains the court's rulings in Serafine's favor: one subsection of the Act, providing for what it means to practice psychology, was unconstitutional as applied to her, and another, also about what it means to practice psychology, was facially unconstitutional because it was overbroad. *See Serafine v. Branaman*, 810 F.3d 354, 358–70 (5th Cir. 2016). What the prior-restraint theory "lost," the overbreadth theory "won"—the challenged portion of the Act was held unconstitutional. We agree with Serafine that exhibit D could not constitute legally sufficient evidence of a litigation "finally determined adversely" to her. *See* Tex. Civ. Prac. & Rem. Code § 11.054(1)(A).

Next, we resolve Serafine's challenge to exhibits A/B, E, F, and I by a plain reading of the statute. She applies the pre-motion "seven-year period" from Section 11.054(1) to the final-adverse-determination requirement from subsection (A), but that is not where ordinary grammar and usage lead. *See El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 531 n.51 (Tex. 2020) (requiring plain-meaning interpretation to agree with "the rules of grammar and common usage" (quoting Tex. Gov't Code § 311.011(a))). In normal paragraph form and without subsection-enumeration or indentations, this is what the relevant language says:

> A court may find a plaintiff a vexatious litigant if the defendant shows . . . that: the
> plaintiff, in the seven-year period immediately preceding the date the defendant

31

> makes the motion . . . , has commenced, prosecuted, or maintained at least five litigations as a pro se litigant other than in a small claims court that have been: finally determined adversely to the plaintiff.

Tex. Civ. Prac. & Rem. Code § 11.054(1)(A) (formatting altered). A litigation can be commenced within the seven years without having yet been finally determined, and so long as the defendant shows that five such litigations "have been[] finally determined adversely to the plaintiff," the defendant has made the required showing. The language does not require the final determination to have come within the seven years, which, given its position within the sentence and its being offset by commas, modifies only the idea of what "the plaintiff . . . has commenced, prosecuted, or maintained." Exhibits A/B, E, F, and I constitute sufficient evidence of finally determined litigations even if remanded proceedings were still to come, as with the litigations represented by exhibits A/B and F, or if the final determination occurred past the seven-year period because the litigation still was commenced, maintained, or prosecuted within the seven-year period, as with the litigations represented by exhibits E and I. *Cf. Dolenz v. Boundy*, No. 05-08-01052-CV, 2009 WL 4283106, at *2 (Tex. App.—Dallas Dec. 2, 2009, no pet.) (mem. op.) (litigations commenced outside statutory seven-year period were countable: "[T]he statute states that the cases must be 'commenced, prosecuted, or maintained' within the seven-year period. These two cases were maintained within the seven-year period."). We thus reject Serafine's challenge to the purported litigations represented by exhibits A/B, E, F, and I.[13]

---

[13] Serafine's citation of a statement of ours in *Physician Assistant Board v. Perez* is merely to dicta. *See* No. 03-16-00840-CV, 2017 WL 5078141, at *3 n.2 (Tex. App.—Austin Oct. 31, 2017, no pet.) (mem. op.) ("Because it is unnecessary to the disposition of this appeal, we expressly do not determine whether appellants' evidence established 'at least five litigations' that had been 'finally determined adversely' to Perez in the applicable seven-year period.").

The result of our analysis is that we sustain in part and overrule in part the relevant portions of Serafine's second issue. We hold that the trial court had before it legally and factually sufficient evidence of six qualifying litigations under Section 11.054(1)(A)—those represented by exhibits A/B, E, F, G, H, and I.

### C. *Serafine is subject to Chapter 11 despite her argument from Section 11.002(a).*

Serafine next argues that she may not be found to be a vexatious litigant because Chapter 11 "does not apply to an attorney licensed to practice law in this state unless the attorney proceeds pro se." *See* Tex. Civ. Prac. & Rem. Code § 11.002(a). We resolve this argument in line with our analysis above about when a represented party still is proceeding *pro se*. At the vexatious-litigant hearing, Serafine argued all her issues for herself, and her retained attorney spoke up only at the end of the hearing to clarify that Serafine sought a written order denying her request that the court hear her TCPA motion and motion to change venue before hearing the vexatious-litigant motions. By arguing her own opposition to the vexatious-litigant motions, offering evidence for herself, and presenting her own testimony at the hearing (rather than, for example, allowing her retained attorney to examine her), Serafine proceeded *pro se* in this suit and thus is subject to Chapter 11 despite her reliance on Section 11.002(a). We overrule the relevant portion of her second issue.

## III. The vexatious-litigant hearing was not barred by laches because trial courts may hold such hearings *sua sponte*.

Finally, we consider Serafine's argument about the timing of the vexatious-litigant hearing *vis-à-vis* the vexatious-litigant motions. She argues that laches operated to bar the hearing because it took place over a year after the motions were filed—filing in December 2019 and the hearing in December 2020. But courts may conduct vexatious-litigant hearings on their own

motion to consider awarding pre-filing relief. *See id.* § 11.101(a); *Akinwamide v. Transportation Ins. Co.*, 499 S.W.3d 511, 532 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("Even if [defendant]'s motion . . . is considered untimely, this Court has held that a trial court may make a vexatious litigant declaration on its own motion, if it provides the plaintiff with notice and the opportunity for a hearing."); *Cooper v. McNulty*, No. 05-15-00801-CV, 2016 WL 6093999, at *3 (Tex. App.—Dallas Oct. 19, 2016, no pet.) (mem. op.) ("[T]he statute authorizes a court 'on its own motion' to raise the vexatious litigant issue."). Because the trial court could hold the vexatious-litigant hearing *sua sponte*, the alleged laches-supporting delay from when the motions were filed does not support a reversal. We overrule this remaining portion of Serafine's second issue.

## CONCLUSION

We hold that legally and factually sufficient evidence supported the trial court's finding that Serafine is a vexatious litigant, that the finding was not an abuse of discretion, and that the court did not abuse its discretion by ordering pre-filing relief in the First Order and Second Order. We overrule Serafine's challenge about the lack of findings of fact and conclusions of law. We otherwise dismiss the portions of this interlocutory appeal over which we have no jurisdiction.

_____

Chari L. Kelly, Justice

Before Justices Baker, Kelly, and Smith

Affirmed in Part; Appeal Dismissed in Part for Want of Jurisdiction

Filed: January 31, 2023